```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

BRIAN WILKINSON,

    Plaintiff,

v.

                                              Civil Action No.: 15-16291

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is defendant United States of America's motion for summary judgment, filed on August 9, 2016 (ECF No. 40).

I.

This case is an action for medical negligence and other torts pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2672, seeking damages for failing to provide plaintiff Brian Wilkinson with proper medical care. Plaintiff was being cared for from February through June 2013 by Cabin Creek Health System ("Cabin Creek"), a medical clinic located in Kanawha County, West Virginia, and Donna Burton, a nurse practitioner there. The complaint alleges that the clinic "negligently fail[ed] to correctly diagnose and treat the cause of his swollen lymph nodes from February 2013 to June 2013," which was cancerous carcinoma later diagnosed as such on or

about April 3, 2014.  Compl. ¶ 9, 11.  Cabin Creek was under the jurisdiction of the United States as a part of the federal Department of Health and Human Services, and therefore any remedy will be against the United States under the FTCA.  Plaintiff alleges a loss of chance theory under which the clinic's negligence caused him pain, injury, and loss of life expectancy.

The only argument raised in the United States' motion for summary judgment is that plaintiff's medical expert, Dr. Mark Levin, gave an expert opinion that is inconsistent and so does not meet the statutory standard of the West Virginia Medical Professional Liability Act ("MPLA") for loss of chance.  Plaintiff responds that the United States has misread the expert opinion that, plaintiff concludes, clearly meets the statutory standard.

II.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Under the FTCA, the state tort law will govern the substantive claims of a plaintiff against the United States. See 28 U.S.C. 1346(b)(1); Def.'s Mem. in Supp. of Mot. for Summ. J. 1 (hereinafter "Mot. for Summ. J."). If a plaintiff would have a claim against a similarly situated private party under state law, the claim usually will lie against the United States under the FTCA. United States v. Muniz, 374 U.S. 150, 153 (1963) (citing 28 U.S.C. § 2674). Here, the MPLA provides the substantive law that governs plaintiff's claims. In particular,

3

the government notes that when a plaintiff proceeds under a loss of chance theory, the relevant statutory text reads as follows:

> If the plaintiff proceeds on the "loss of chance" theory, i.e., that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

W. Va. Code § 55-7B-3(b).

The government argues that Dr. Levin's report, dated July 28, 2016, does not show that Cabin Creek created a loss of chance of more than 25 percent for plaintiff. According to the government, Dr. Levin gave two inconsistent opinions by first stating that there was a 25 percent decrease in prognosis or five-year survival, and then that plaintiff suffered a reduction in life expectancy of 30 to 35 percent. Plaintiff responds that defendant has simply failed to read the opinion properly, and that in fact Dr. Levin's conclusion was that the failure of Cabin Creek to diagnose him led to a reduction of life expectancy of 30 to 35 percent.

Plaintiff appears to be correct. Dr. Levin's report reads as follows:

4

Given these circumstances, my opinions are as follows: Cabin Creek Health Systems by and through their employee Ms. Burton deviated from the standard of care by negligently failing to consider, diagnose and treat throat cancer on February 19, 2013 and thereafter; negligently failing to properly examine Mr. Wilkinson on February 19, 2013 and thereafter; and negligently failing to refer Mr. Wilkinson to a specialist on February 19, 2013.

. . . [The cancer] in February 2013 was stage III. At diagnosis, it was stage IVB.

Survival rates for tongue cancer were reported by Yang et al to be 45% for stage III and 30% for stage IV. However, that includes stages IVA and IVB; in my opinion, it is significantly lower for the sub-stage IVB. American Head and Neck Society says that "five year survival drops to about 50 percent for stage III cancers and further drops to roughly 35 percent for (overall) stage IV cancers." Survival for these patients had not substantially improved over the past 5 years. In summary, there had been a decrease in prognosis of 25% or a total drop in 5 year survival of 25%.

There are two more factors relevant to prognosis. First the cancer was P16 positive, which means that it is more responsive to treatment with chemotherapy. The outcome would have been better when treated earlier. Secondly, at diagnosis he had anaplastic histology, which denotes worse prognosis, because it is more aggressive disease. In my opinion, it became more aggressive because of the delay.

In summary, deviations from the standard of care proximately caused Mr. Wilkinson to suffer a reduction of life expectancy of at least 30-35% as a consequence of his cancer not being treated on February 19, 2013. More likely than not Mr. Wilkinson cancer on February 19, 2013 was stage III. In addition, had Mr. Wilkinson been diagnosed on or about February 19, 2013 he would likely have only needed chemotherapy and radiation and not surgery. Because earlier stage disease of the p16 type responds well to chemotherapy and radiation alone. Surgery

5

> substantially contributes to dysfunction, pain and suffering following treatment. Further, the likelihood of recurrence is significantly greater than the occurrence of another primary cancer.
>
> I hold the foregoing opinions to a reasonable degree of medical probability and/or certainty. I reserve the right to offer additional opinions based upon additional discovery.

Mot. for Summ. J. 10-11.

The government latches on to two statements it alleges are inconsistent. First, with respect to a study he cites, Dr. Levin states that "there had been a decrease in prognosis of 25% or a total drop in 5 year survival of 25%." Id. 10. After listing two more factors relevant to Mr. Wilkinson's particular prognosis, he then states "[i]n summary, deviations from the standard of care proximately caused Mr. Wilkinson to suffer a reduction of life expectancy of at least 30-35% as a consequence of his cancer not being treated on February 19, 2013." Id. 11.

These statements are not inconsistent for two reasons. On one hand, the first statement appears simply to be Dr. Levin's summary of a medical study, not a conclusion about plaintiff's case in particular. On the other hand, the second statement clearly expresses a conclusion regarding Mr. Wilkinson – that he suffered a 30 to 35 percent life expectancy reduction. Indeed, it

6

appears that Dr. Levin's discussion of the two additional factors relevant to his prognosis caused him to fix plaintiff's reduction in life expectancy at a level of at least 30 to 35 percent as a consequence of his not being treated properly on February 19, 2013.  Especially when considering that a court on summary judgment draws inferences that are favorable to the non-moving party, there is no reason to draw the government's conclusion that Dr. Levin gave contradictory opinions.  Consequently, the court denies the government's motion for summary judgment.

IV.

For the foregoing reasons, it is ORDERED that defendant's motion for summary judgment be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: March 30, 2017

John T. Copenhaver, Jr.
United States District Judge